**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| MICHAEL ANTHONY MONTOPOLI, | DOCKET NUMBER DC-4324-13-0666-I-1 |
| Appellant, | |
| v. | |
| NATIONAL SCIENCE FOUNDATION, | DATE: January 12, 2015 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

William S. Aramony, Esquire, Alexandria, Virginia, for the appellant.

Deanne Sobczak, Esquire, Arlington, Virginia, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action under the Uniformed Services Employment and Reemployment Rights Act of 1994 (codified at 38 U.S.C.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

§§ 4301-4333) (USERRA).[2] Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly modified by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2    The appellant is a physician and a member of the United States Naval Reserve. Initial Appeal File (IAF), Tab 1 at 7, Tab 12 at 17. Effective December 25, 2005, the agency appointed the appellant to a Senior Executive Service (SES) position as Section Head in the agency's Office of Polar Programs (OPP). IAF, Tab 7 at 13. In December 2006, the agency and the appellant entered into a 1-year pay agreement, pursuant to which the agency paid the appellant a Physicians Comparability Allowance (PCA).[3] *See* 5 U.S.C. § 5948;

---

[2] As discussed further below, in the initial decision the administrative judge found that the Board has jurisdiction over this appeal but denied the appellant's request for corrective action under USERRA. Initial Appeal File (IAF), Tab 17, Initial Decision (ID) at 1-2, 4, 10. Due to an apparent inadvertent error, however, at the end of the initial decision the administrative judge states, "The appeal is DISMISSED." ID at 11.

[3] Under 5 U.S.C. § 5948(a), in order to recruit and retain highly qualified government physicians, an agency head may enter into a service agreement with a government

IAF, Tab 7 at 12.  The agency renewed the appellant's PCA pay agreement for 1-year terms in December 2007 and December 2008.[4]  *Id.* at 10-11.

¶3          In August 2009, the appellant received orders to report for active duty. IAF, Tab 4 at 28.  Beginning August 30, 2009, the agency placed the appellant in a leave-without-pay status because he was on active duty.  IAF, Tab 7 at 9.  The appellant was released from active duty in October 2012, IAF, Tab 4 at 13, and, effective December 23, 2012, he returned to his position with the agency.  IAF, Tab 7 at 8.  Upon his return, the agency resumed paying the appellant a PCA for the amount of time remaining in his December 2008 PCA pay agreement when he was called to active duty in August 2009.  The agency stopped paying the appellant a PCA on April 6, 2013, and did not renew the appellant's PCA pay agreement.  IAF, Tab 4 at 40.

¶4          The appellant filed an appeal with the Board alleging that the agency violated his rights under USERRA by not renewing his PCA pay agreement in April 2013.  IAF, Tab 1.  Specifically, the appellant claimed that, by refusing to renew his PCA pay agreement, the agency:  (1) discriminated against him based on his military service; and (2) did not return him to the same status he held before his absence, thereby violating his reemployment rights under USERRA. *Id.* at 7-8, Tab 4 at 6-9.  He requested a hearing.  IAF, Tab 1 at 2.

¶5          After holding a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action.  Initial Decision (ID) at 2, 10.  She found that the Board has jurisdiction over the appellant's USERRA appeal; however, the appellant failed to meet his burden of showing that his

---

physician which provides for the physician to complete a specified period of service in the agency in return for an allowance for the duration of the agreement.

[4] Under 5 U.S.C. § 5948(d), any agreement entered into by a physician under section 5948 shall be for a period of 1 year of service in the agency involved unless the physician requests an agreement for a longer period of service.  There is no indication in the record that the appellant made such a request.

military service was a motivating factor in the agency's decision to decline to renew his PCA pay agreement when it expired in April 2013. ID at 4, 10. The administrative judge further found that, in any event, the agency established by preponderant evidence that its decision to discontinue the appellant's PCA payment was based on legitimate considerations, i.e., the federal government's fiscal climate. ID at 10. The administrative judge also found that the agency met its obligation to the appellant by returning him to like or substantially similar status because he was returned to his position of record and paid for the remainder of the PCA he was owed under the PCA pay agreement when he left for military service. ID at 10.

¶6 The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response to the petition for review. PFR File, Tab 6. The appellant has filed a reply to the agency's response. PFR File, Tab 4.

## ANALYSIS

The appellant did not prove that the agency discriminated against him in violation of USERRA by not renewing his PCA pay agreement in April 2013.

¶7 Under 38 U.S.C. § 4311(a), a person who performs uniformed service may not be denied reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that service. An appellant raising a discrimination claim under 38 U.S.C. § 4311 must prove by preponderant evidence that his military status was a substantial or motivating factor in the agency action. *Sheehan v. Department of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001). Once an appellant has met his burden of proof, the burden shifts to the agency to show, by preponderant evidence, that it would have taken the action despite the appellant's protected status. *Id.* at 1014.

¶8 In finding that the appellant did not show that his military service was a substantial or motivating factor in the agency's decision to terminate his PCA incentive, the administrative judge considered the hearing testimony of the appellant, the OPP Director, and a Supervisory Human Resources Specialist for

the agency, who testified that the agency has not approved any requests for retention incentives since January 2012. ID at 5-8. Applying the factors for resolving credibility issues set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), the administrative judge found that all of these witnesses testified in a very clear, direct, and straightforward manner. ID at 8.

¶9        The administrative judge also considered the documentary evidence, including an April 4, 2013 memorandum from the Office of Management and Budget (OMB), which stated that, in light of current budgetary constraints, recruitment and retention incentives should be used only on a highly limited basis and in circumstances where they are necessary and critical to maintaining the agency's mission. ID at 7; *see* IAF, Tab 12 at 84. During her testimony, as summarized in the initial decision, the OPP Director stated that she did not believe that paying the appellant a PCA was necessary and critical to maintaining the agency's mission. ID at 7.

¶10       The administrative judge also considered the OPM regulations governing PCAs, including 5 C.F.R. § 595.104, which identifies four conditions that must be met for an agency head to determine that a significant recruitment and retention problem exists so as to warrant the payment of a PCA. ID at 9. These conditions are: (1) evidence that the agency is unable to recruit and retain physicians, such as vacant positions or an unacceptably high turnover rate; (2) the qualification requirements used as a basis for considering candidates for the vacant positions in the category do not exceed the qualifications that are actually necessary for successful performance of the work of the positions in the category; (3) the agency has made efforts to recruit qualified candidates for any vacant positions in the category and to retain physicians presently employed in positions in the category; and (4) a sufficient number of qualified candidates is not available to fill the existing vacancies in the category at the rate of pay the agency may offer if no comparability allowance is paid. 5 C.F.R. § 595.104.

¶11     The administrative applied these criteria and sustained the agency's claim that they did not warrant giving a PCA to the appellant.  ID at 9.  In making this finding, the administrative judge credited the OPP Director's testimony that there is no evidence that the agency is unable to recruit and retain physicians for the appellant's position.  ID at 9-10.  In particular, the administrative judge found that the OPP Director credibly testified that:  in the summer of 2012, a physician approached her and stated that he would like to work in OPP and would be willing to do so at a non-SES level; and, when she presented this information to the agency's senior staff, she was informed that there were other physicians who had expressed a similar interest.  ID at 7, 10.  The administrative judge further found that, given the fiscal climate of the federal government, the OPP Director had a legitimate reason to review the appellant's PCA to determine if it was warranted and that she did so consistent with OMB's[5] guidance.  ID at 10.

¶12     We find unavailing the appellant's argument on review that the administrative judge erred in finding that his military service was not a motivating factor in discontinuing the appellant's PCA pay.  PFR File, Tab 1 at 16-19.  The OPM regulations implementing 5 U.S.C. § 5948 explicitly state that PCAs are paid only to categories of physicians for which the agency is experiencing recruitment and retention problems.  5 C.F.R. § 595.101.  The OPP Director's hearing testimony established that the agency was not experiencing recruitment and retention problems when the appellant's PCA agreement expired in April 2013, as other physicians had expressed an interest in the appellant's position.  *See* ID at 7.  Therefore, the conditions for renewing the PCA agreement were not met.  In light of these circumstances, the administrative judge properly concluded that the appellant failed to show that his military service was a substantial or motivating factor in the agency's decision to decline to renew his PCA agreement in April 2013.  ID at 10.

─────────────

[5] Due to an apparent inadvertent error, the administrative judge cited "OPM's April 13, 2013 guidance" instead of OMB's April 4, 2013 guidance.  ID at 10.

<u>The agency did not violate the appellant's reemployment rights under USERRA by declining to renew his PCA agreement in April 2013.</u>

¶13    A reemployment claim arises under USERRA when an employee alleges that an agency has not met its obligations under 38 U.S.C. §§ 4312-4318 following his absence from civilian employment to perform uniformed service. *Clavin v. U.S. Postal Service*, 99 M.S.P.R. 619, ¶ 5 (2005).  Under 38 U.S.C. § 4313(a)(2)(A), a person whose period of uniformed service was more than 90 days is entitled to reemployment in the position in which he would have been employed if his continuous employment had not been interrupted by such service,[6] or a position of like seniority, status and pay, the duties of which he is qualified to perform. Unlike discrimination cases, an individual's rights under USERRA's reemployment provisions do not depend on the motivation for an agency's action (or inaction), and the agency bears the burden of proving that it met its statutory obligations.  *Clavin*, 99 M.S.P.R. 619, ¶ 6.

¶14    The appellant alleges on review that the administrative judge improperly failed to address his reemployment claim under USERRA, and he reasserts his argument that, by refusing to renew his PCA pay agreement following his return from active duty, the agency, in violation of 38 U.S.C. § 4313(a), did not return him to the same employment status that he occupied before his active duty military service.  PFR File, Tab 1 at 5, 7-14; IAF, Tab 1 at 7-8, Tab 4 at 6-7.  The appellant further contends on review, as he did below, that, in analyzing his reemployment claim, the Board should apply the rationale of the First Circuit Court of Appeals in *Rivera-Melendez v. Pfizer Pharmaceuticals, LLC*, 730 F.3d 49 (1st Cir. 2013).  PFR File, Tab 1 at 9-11; IAF, Tab 15 at 4-7.  In that case, the

---

[6] This position is the "escalator position."  *See* 20 C.F.R. § 1002.191.  The principle behind the escalator position is that, if not for the period of uniformed service, the employee could have been promoted (or, alternatively, demoted, transferred, or laid off) due to intervening events.  *Id.*  The escalator principle requires that the employee be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites that he or she would have attained if not for the period of service.  *Id.*

First Circuit held that the escalator principle and reasonable certainty test governing reemployment claims under USERRA apply to non-automatic (i.e., discretionary) promotions as well as automatic promotions.[7]  *Rivera-Melendez*, 730 F.3d at 58.

¶15       Contrary to the appellant's assertion on review, the administrative judge did address his reemployment claim in the initial decision.  The administrative judge rejected the appellant's argument that the agency did not return him to the same status he held before active duty, finding that the agency met its obligation to the appellant by returning him to like or substantially similar status.  ID at 10.  In making this finding, the administrative judge noted that the agency returned the appellant to his position of record and paid him for the remainder of the PCA he was owed under the contract when he left for military service.  ID at 10.  As for the appellant's argument that *Rivera-Melendez* is applicable in this case, the administrative judge stated that her holding would be the same under either framework (i.e., regardless of whether the Board applied the escalator principle only to discretionary benefits or to both discretionary and nondiscretionary benefits).  ID at 10-11 n.1.

¶16       The appellant argues on review that "[i]t was reasonably certain that [he] would be paid the PCA pay after he returned from active duty" and, therefore, "[t]he fact that he was denied the PCA benefit of employment meant that he was

---

[7] In *Rassenfoss v. Department of the Treasury*, 121 M.S.P.R. 512 (2014), which was issued while this appeal was pending on review, the Board similarly held that the escalator principle and its associated reasonable certainty test apply to reemployment claims under USERRA regardless of whether the agency action in question is discretionary.  *Id*., ¶¶ 12-13.  In so holding, the Board overruled prior case law that limited the application of the escalator principle to nondiscretionary benefits on the theory that these are the only benefits which would have been reasonably certain to have accrued during the employee's absence.  *Id.*, ¶ 13 (*overruling West v. Department of the Air Force*, 117 M.S.P.R. 24, ¶¶ 8-9 (2011), and *Leite v. Department of the Army*, 109 M.S.P.R. 229, ¶¶ 10-11 (2008), to the extent that the Board's holdings in those cases are premised on the assumption that discretionary personnel actions inherently fail the reasonable certainty test).

not returned to the same status." PFR File, Tab 1 at 10-11. In support of this argument, the appellant asserts that: he had received PCA pay every year that he worked at the agency, except while on active military duty; and the agency represented to Congress, via the budget requests it submitted to OMB, that it intended to pay him a PCA when he returned from military duty. *Id.* at 11-12. In that regard, the appellant notes that the agency informed OMB in its budget requests for Fiscal Years 2013 and 2014 that it expected to "resume PCA payments" to the appellant upon his return from military service. *Id.* at 12; *see* IAF, Tab 12 at 60, 80.

¶17        We find the appellant's argument unavailing. The fact that the appellant had received a PCA pay agreement every year since 2006 (excluding the years in which he was on active duty military service) does not mean that the agency was required by USERRA to renew the appellant's PCA pay agreement when it expired in April 2013. As the administrative judge explained, the appellant was not entitled to a PCA in perpetuity. ID at 10. Further, consistent with its representations to OMB, the agency, in fact, did resume paying the appellant a PCA upon his return from military service. Although the agency did not renew the appellant's PCA agreement in April 2013, we find that it had no obligation to do so. Rather, we agree with the administrative judge that the agency met its reemployment obligations under USERRA by returning the appellant to his position of record following his return from military service and paying the appellant a PCA for the amount of time remaining in his December 2008 PCA pay agreement when he left for military service in 2009. ID at 10.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request the United States Court of Appeals for the Federal Circuit to review this

final decision. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems

Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.